# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

AMANDA L. CHURA,
et al.,

                              Civil Action

                    Plaintiffs,

v.                                 Case No. 11-2090-CM-DJW

DELMAR GARDENS OF LENEXA, INC.,

                    Defendant.

## MEMORANDUM AND ORDER

As happens too frequently in these days of electronically stored information ("ESI"), counsel in this case have been unable to sufficiently cooperate[1] to resolve their discovery disputes. Therefore, this matter is before the Court on Plaintiffs' Motion to Compel Defendant to Search for and Produce Electronically Stored Information and Other Documents and Answer Certain Interrogatories (ECF No. 20). Plaintiffs request an order compelling Defendant to search for and produce ESI, produce documents responsive to Plaintiffs' First Request for Production Nos. 1-11, 13-15, 18-20 and 22, and serve supplemental answers to Plaintiffs' First Interrogatories Nos. 4, 7-8, 12-13, and 15.[2] For the reasons set forth below, the motion is granted in part and denied in part.

---

[1]David J. Waxse, Cooperation—What Is It and Why Do It?, XVIII RICH. J. L. & TECH. 8 (2012), http://jolt.richmond.edu/v18i3/article8.pdf.

[2]Plaintiffs originally moved to compel as to their First Request for Production Nos. 1-15, 18-24, and 27-28, and First Interrogatory Nos. 3-4, 7-9, 12-13 and 15. In their reply, Plaintiffs indicate that Request Nos. 12, 23-24, 27-28, and Interrogatory Nos. 3 and 9 are no longer in dispute, and Request No. 21 is withdrawn.

## I.   Background Facts

Plaintiffs Chura, Cook, and Gilstrap bring this employment discrimination action against their former employer under Title VII and the Kansas Act Against Discrimination ("KAAD"). They assert claims for sexual harassment resulting in a hostile work environment and retaliation while employed at Defendant's nursing and rehabilitation center in Lenexa, Kansas.  Plaintiff Gilstrap also asserts claims for violations of the Fair Labor Standards Act ("FLSA"), Kansas Wage Payment Act ("KWPA"), and the Family and Medical Leave Act ("FMLA").   Plaintiffs allege that they were subjected to discriminatory, harassing and retaliatory conduct by Defendant's employees, supervisors, and managers, and that Defendant failed to properly investigate, address, and remedy the conduct that created a hostile work environment.

On August 5, 2011, Defendant served its Response to Plaintiffs' First Set of Interrogatories (Nos. 1-15) and its Response to Plaintiffs' First Request for Production of Documents (Nos. 1-28).[3]  At the request of Plaintiffs, the Court held a telephone status conference on September 12, 2011 to discuss ESI discovery issues.  At the status conference, counsel agreed to work together to create an agreeable list of search terms as an attempt to resolve the outstanding issues regarding Plaintiffs' requests for ESI. On September 27, 2011, counsel for Plaintiffs filed a Certificate of Compliance (ECF No. 19) certifying that he made a good faith attempt to confer with Defendant's counsel to resolve the parties' discovery

---

[3]*See* Def.'s Certificate of Service (ECF No. 13).

disputes regarding Defendant's objections to many of Plaintiff's interrogatories and requests for production, as well as the parties' dispute regarding the sufficiency of Defendant's search for ESI and format of production.  This motion followed.

## II.      Requests for Production in Dispute

### A.      Request for Production No. 1

Plaintiffs' Request No. 1 asks Defendant to identify and produce each document[4] concerning the knowledge of the ten individuals identified by Defendants (in Interrogatory No. 1) as having knowledge of the facts concerning the allegations in the complaint or answer.  Defendant did not object to Request No. 1, but merely referred Plaintiffs to "documents produced, including Plaintiff Cook and Plaintiff Chura's written complaints, and Plaintiffs Cook, Chura, and Gilstrap's personnel files."

In their motion, Plaintiffs assert that Defendant failed to produce their written complaints, any emails or phone logs, the investigation files, and their personnel files. According to Plaintiffs, Defendant also failed to produce responsive documents that one would expect to find in this type of litigation.  These documents would include: emails between Defendant's managers and witnesses regarding Plaintiffs' allegations or Defendant's defenses, notes by the human resource director from the investigation she conducted as a result of Plaintiffs' complaints about the alleged harasser and the environment at the nursing facility where Plaintiffs worked, and reports and emails to the corporate office regarding the

---

[4]The Court assumes that the term "document," as used in Plaintiffs' Requests for Production of Documents, was intended to include both paper documents and ESI.

complaints.

Defendant states that it has produced all documents responsive to Request No. 1. It produced all three Plaintiffs' personnel files, as well as the files associated with their respective charges of discrimination, which included any and all notes and email regarding the listed witnesses' knowledge of Plaintiffs' allegations. These were produced as part of its Fed. R. Civ. P. 26(a) initial disclosures, and again in response to Plaintiffs' requests for production. Defendant argues that it cannot produce what does not exist, despite Plaintiffs' unsubstantiated beliefs that certain documents should exist.

Plaintiffs reply that nowhere in Defendant's production are any documents or ESI generated by the human resources director or facility administrator regarding their investigation into Defendant's work environment. Also missing is any ESI or documents generated by the a facility administrator, human resources director, or human resources manager regarding Plaintiffs' complaints, other than one memo by the facility administrator pertaining to Plaintiff Gilstrap's complaints about the alleged harasser criticizing his work performance. Nor is there any ESI related to Mr. Gilstrap's medical leave in December 2010, Plaintiffs' complete wage payment records, any documents concerning the errors made in Mr. Gilstrap's final paycheck, performance appraisals, and any witness statements. Plaintiffs argue that Defendant is a fairly large corporate nursing home company with numerous facilities. It does not make any sense that in response to numerous complaints from employees about the work environment that a corporate human resources manager would be sent to investigate and not create a single document reporting her findings to Defendant's

4

corporate managers.

Defendant is correct that it should not be compelled produce documents that do not exist and therefore cannot be produced.  But, as Plaintiffs argue, it does seem unlikely that Defendant has no responsive documents or ESI other than the Plaintiffs' personnel files and files associated with their respective charges of discrimination. It also seems questionable that Defendant's human resource manager and other employees who investigated the multiple complaints created no written email, correspondence, or reports discussing the investigation.  Plaintiffs have thus raised reasonable concerns regarding the sufficiency of Defendant's production of responsive documents and ESI.  Plaintiffs attribute Defendant's failure to produce responsive documents and ESI to either a failure to preserve evidence, or a failure to adequately search for them.  It claims that Defendant's search efforts consisted of the human resources manager searching one computer (the alleged harasser's computer) by running an Outlook search.

Based upon the limited information provided in the parties' briefing, the Court cannot determine whether Defendant met its duty to both preserve relevant evidence or conduct a reasonable search for ESI responsive to Request No. 1.  It is unclear what actions Defendant undertook in order to preserve and search for ESI responsive to Request No. 1.  The Court finds that Defendant's failure to produce any ESI, such as emails, attachments, exhibits, and word processing documents, raises justifiable concerns that Defendant may have 1) failed to preserve relevant evidence, or 2) failed to conduct a reasonable search for ESI responsive

to the discovery requests.[5]  The Court will therefore set an evidentiary hearing regarding Defendant's efforts to preserve and search for ESI responsive to Plaintiffs' interrogatories and requests for production.  Based on the evidence presented at the hearing, the Court will determine whether Defendant made reasonable efforts to preserve relevant evidence and search its computer systems for ESI responsive to Request No. 1.

## B.      Request for Production Nos. 2 and 14

Request No. 2 asks Defendant to "[i]dentify and produce each document mentioning the complaints identified in response to Plaintiffs' Interrogatory No. 2," which sought the identity of all persons who have worked at Defendant Delmar Gardens of Lenexa and made complaints of employment discrimination, a hostile work environment, or retaliation. Defendant identified five individuals, including the three Plaintiffs, in its response to Interrogatory No. 2.  Request No. 14 seeks documents reflecting, referring or relating to the

---

[5]Magistrate Judge Rushfelt has recently described a party's duty to search for documents responsive to requests for production in *Robinson v City Arkansas City, Kan.*, No. 10-1431-JAR-GLR, 2012 WL 603576, at *4 (D. Kan. Feb. 24, 2012) (citations omitted):

> To adequately respond to a request for production, the respondent must "conduct a reasonable search for responsive documents." Parties, along with their employees and attorneys, have a duty to act "competently, diligently, and ethically" with respect to discharging discovery obligations.  This requires a joint effort "to identify all employees likely to have been authors, recipients or custodians of documents" responsive to the requests for production.  Parties "jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents." A party does not "meet its discovery obligations by sticking its head in the sand and refusing to look for [documents]." It is inexcusable, furthermore, to respond to a request for production without reviewing the computer of a primary actor in the sequence of events leading to litigation.

charges of sexual harassment, discrimination or retaliation filed by any employee against Defendant in the past five years.  In response to these requests, Defendant produced the charges of discrimination and complaints filed by Plaintiffs and a charge of discrimination filed by one other employee.  It did not assert any objections to either request.

Plaintiffs argue in their motion that Defendant failed to produce documents and ESI concerning their complaints.  Specifically, Defendant failed to produce any of the ESI and documents regarding the sexual harassment complaints of Darrell English against Kelly Leech. Those complaints resulted in Defendant allegedly taking action against Ms. Leech and are highly relevant to the inappropriate atmosphere that existed at Defendant's Lenexa facility at the time Plaintiffs worked there. Defendant also appears to have omitted all of the ESI and documents related to Andre White's race discrimination claim. The investigation documents in Mr. White's case can provide information and knowledge on how Defendant investigates and responds to employee complaints. To the extent Defendant took one claim more seriously than others, that can provide relevant information in this case and/or lead to discoverable information on Defendant's policies and procedures.

Defendant asserts that it has produced all documents responsive to Plaintiffs' original request for complaints against Delmar Gardens of Lenexa and it should not be required to produce any additional documents.  It claims that Plaintiffs' request for a sexual harassment complaint filed at another facility in Kansas by a manager against an officer or executive is irrelevant to the current lawsuit and goes beyond the scope of what Plaintiffs originally requested, which was documents regarding "all persons who have worked or worked at

Defendant Delmar Gardens of Lenexa . . . who have made complaints of employment discrimination, hostile work environment, or retaliation, against Employer." Defendant states that it produced to Plaintiffs all documents regarding those complaints of sex discrimination and hostile work environment from Delmar Gardens of Lenexa. Plaintiffs now, however, seek information and documentation regarding an unrelated complaint filed by an employee who was employed by a different facility; a facility that none of the Plaintiffs have ever worked at. Defendant asserts that the additional information and documentation Plaintiffs now attempt to request goes beyond the scope of Plaintiffs' initial request and is irrelevant to Plaintiffs' allegations which raise claims against Delmar Gardens of Lenexa only.

The Court agrees with Defendant that the information sought by Plaintiffs in their motion to compel is outside the scope of Request No. 2, which specifically limits the scope to former and current employees of the Lenexa facility where Plaintiffs worked. Request No. 14, however, is not limited to employees of the Lenexa facility, but seeks sexual harassment, discrimination, or retaliation charges filed by any employee against Defendant in the past five years. Defendant argues that this information is not relevant. As Defendant failed to assert a relevancy objection in its response to either Request No. 2 or 14, the Courts find that Defendant has not preserved the objection and it is overruled. Plaintiffs' motion to compel is denied as to Request No. 2, but granted as to Request No. 14. Defendant should produce all documents reflecting any charges of sexual harassment, discrimination or retaliation filed by any employee against Defendant in the past five years.

**C.      Request for Production Nos. 3, 5, 13, and 20**

Request No. 3 seeks documents concerning Defendant's awareness of Plaintiffs' complaints.  Request No. 5 seeks documents concerning Defendant's investigation into Plaintiffs' complaints.  Request No. 13 asks Defendant to produce documents reflecting, referring to or relating to the charges filed by Plaintiffs. Request No. 20 requires Defendant to produce documents gathered in connection with Plaintiffs' claims.

In response to Request Nos. 3 and 13, Defendant referred Plaintiffs to documents it had produced, including Plaintiff Cook and Plaintiff Chura's written complaints, and all three Plaintiffs' charges of discrimination.  It objected to Request Nos. 5 and 20 on the grounds that they seek information protected by the attorney-client privilege and the work product doctrine.  It further reserved the right to supplement its responses.

Plaintiffs claim that Defendant did not produce all of the documents related to or gathered in connection with their complaints.  According to Plaintiffs, Defendant's corporate human resources manager, and the Lenexa facility manager interviewed numerous employees as a part of their investigation into Plaintiffs' complaints.  Not a single document, however, has been produced that relates to this investigation and no ESI has been produced. Further, Defendant did not produce any documents prepared in response to Plaintiffs' charges other than the official response drafted by Defendant's counsel. They ask for an order compelling Defendant to produce the ESI and documents responsive to these requests.

Defendant states in its response to the motion to compel that "[a]ny and all documents which would concern any 'investigation' into Plaintiffs' complaints are contained in

Plaintiffs' personnel files and EEOC Charge files, all of which were previously produced to Plaintiffs." It further states that there are no additional documents to produce.

The Court finds that Plaintiffs have raised an issue with regard to the sufficiency of Defendant's search for ESI concerning its awareness of, investigation into, and documents gathered in connection with Plaintiffs' complaints, as sought by these requests. To ascertain whether further search efforts by Defendant are required, the Court will hold an evidentiary hearing regarding Defendant's efforts to preserve and search for relevant and responsive ESI. The Court will defer ruling on these requests until after that hearing. If Defendant convinces the Court that it has made reasonable efforts to search for responsive ESI, then no further responses to these requests will be compelled. If the Court finds that Defendant has not made reasonable efforts to search for responsive documents, then Defendant be ordered to produce all documents and ESI located by any additional search efforts.

### D.      Request for Production Nos. 4 and 19

Request No. 4 requires Defendant to identify and produce documents concerning Defendant's efforts to preserve documents and/or ESI, as well as a copy of Defendant's document retention policy and diagrams or manuals explaining the construction or operation of Defendant's computer network. Request No. 19 asks Defendant to identify and produce documents concerning any litigation hold documents created in connection with Plaintiff's claims.

Defendant objected to both Request Nos. 4 and 19 as seeking information not relevant to the issues in this lawsuit and protected by the attorney-client privilege. Defendant further

10

responded to both Requests that it was "instructed by [c]ounsel to take steps to preserve all evidence that is potentially relevant to this litigation, including all documents, recordings, electronically stored information, and physical objects."

Defendant states in its response to the motion to compel that "[a]ll documents preserved by Defendant were produced both as part of Defendant's Initial Disclosures under Fed. R. Civ. P. 26(a), and in response to Plaintiffs discovery requests." It finds Plaintiffs' contention that key documentation from key players have not been produced curious given that Plaintiffs have failed to identify the key document that has not been produced. It maintains that it should not be compelled to produce documents that do not exist, simply because Plaintiffs believe that certain documents should exist.

Plaintiffs state in their reply that Defendant has not produced its litigation hold letters, any documents or emails implementing the litigation hold, or its document retention policy. They maintain that they are entitled to discovery on the issue of Defendant's preservation efforts in order to evaluate whether spoliation has occurred.

As the Court has already determined that an issue exists as to the sufficiency of Defendant's efforts to preserve evidence and conduct a reasonable search for responsive documents and ESI, the Court defers ruling on Request No. 4 and 19 until after the evidentiary hearing.

### E.     Request for Production Nos. 6-7, and 18

Request No. 6 seeks documents concerning Defendant's policy to prevent harassment, discrimination, and/or retaliation. Request No. 7 asks Defendant to produce documents that

"refer, relate to or reflect Defendant's efforts to prevent retaliation against Plaintiffs." Request No. 18 requires Defendant to identify and produce documents such as guidelines and training materials relating to the manner in which Defendant investigates allegations of sexual harassment and/or discrimination.

Defendant responded to Request Nos. 6 and 7 by referring Plaintiffs to Delmar Garden's Personnel Policies, and documents contained in Plaintiffs' respective personnel files. For Request No. 18, it referred Plaintiffs to Delmar Garden's Personnel Handbook and Policies, and documents contained in Plaintiffs' respective personnel files.

Plaintiffs assert in their motion that no documents were produced in response to these Requests. Defendant claims that it provided Plaintiffs with multiple copies of its Personnel Handbook, which contains its policies with regard to harassment, discrimination, preventing retaliation, and investigating complaints of harassment or discrimination. It states that it also produced all three Plaintiff's personnel files, which contained all documents each Plaintiff's employment and the termination of each Plaintiff's employment. It claims that it has produced all documents responsive to these requests. Plaintiffs state in their reply that Defendant did not produce its personnel manual or any other documents related to its purported sexual harassment policy.

The Court is uncertain whether there is a difference between the Personnel Handbook that Defendant claims it produced and its "personnel manual" that Plaintiffs claim that Defendant did not produce. To the extent these are different things, then Defendant shall produce its "personnel manual" to Plaintiffs. The motion to compel as to Request Nos. 6-7,

and 18 is therefore granted in part and denied in part.  If it has not already done so, Defendant shall produce its "personnel manual" to Plaintiffs.

### F.      Request for Production No. 8

Request No. 8 requires that Defendant produce document concerning the reasons for Plaintiffs' termination.  Defendant responded by referring Plaintiffs to documents contained in Plaintiffs' respective personnel files.

Plaintiffs assert in their motion that Defendant produced no ESI or documents it prepared that related to Plaintiffs' terminations, except for one "Termination Report" for Plaintiff Cook.  Plaintiff Cook claims that when her employment was termination, she was told that the decision "came down from above," meaning that it came from the Human Resource Director, Kathy Hamann.  Plaintiffs attribute the reported lack of any responsive documents to Defendant's failure to search Ms. Hamann's computer.

Defendant maintains that it has produced all responsive documents that exist. Plaintiffs, however, have raised reasonable concerns that not all responsive documents and ESI have been located and produced.  The Court will therefore defer ruling on Request No. 8 until it makes a determination on the sufficiency of Defendant's efforts to preserve evidence and conduct a reasonable search for responsive documents and ESI.

### G.      Request for Production Nos. 9-11

Request No. 9 asks Defendant to produce any ESI received, sent or created by the alleged harasser that contain any of 80 different ASCII strings.  Request No. 10 seeks ESI received, sent or created by the alleged harasser that contain any sexual or nude images.

Request No. 11 seeks ESI received, sent or created by anyone in the employ of Defendant that contain any of 27 ASCII string combinations.

Defendant objected to the Requests on the grounds they are overly burdensome, seek information that is not relevant to the issues in the lawsuit, nor reasonably calculated to lead to the discovery of admissible evidence.  Defendant then produced some documents.

Defendant states in its response to the motion that, pursuant to these Requests, it conducted a search on the alleged harasser's computer for ESI containing these terms that were either sent or created by the alleged harasser.  It then produced to Plaintiffs a snapshot of the computer screen after each term had been searched, to demonstrate the results of each search.

Plaintiffs argue in their reply that Defendant admits that it only searched one employee's computer and produced a limited number of text searches for emails.  They contend that Defendant must conduct a thorough search for responsive information and this search should not be limited to ESI contained on the primary harasser's computer.

As Plaintiffs have raised an issue with respect to the adequacy of Defendant's search for ESI responsive to these Requests by its allegedly searching only one computer, the Court defers ruling on Request Nos. 9-11 until after the evidentiary hearing.

**H.      Request for Production No. 22**

Request No. 22 seeks documents concerning the schematics of Defendants' computer information system.  Specifically it requests all documents concerning schematics showing the structure and functioning of:

14

Employer's computer systems, including user computers, and servers; Employer's email system, including MS Exchange server, Employer's system for making tape or other backups of the above; Employer's audio and video recording equipment, location of cameras, microphones, servers, hard drives, backup systems, and reflecting which computer, audio and video recordings are backed up on to which device.

Defendant objected to the Request as being overly broad, unduly burdensome, and seeking information that is not relevant to the issues of this lawsuit. After objecting, Defendant responded that its IT services are contracted out to a third-party. In its response to the motion to compel, Defendant does not re-assert or discuss any of its objections to Request No. 22. The Court therefore deems these objections to be abandoned.[6] Plaintiffs argue that even though Defendant contracts out its IT services, it still must produce responsive documents its IT contractor has regarding its computer systems. The Court agrees. Defendant has a duty to produce all responsive documents within its "possession, custody, or control."[7] If responsive documents are in the possession of its IT service provider but Defendant has authority or control over the documents, then Defendant has a duty to contact the IT service provider and obtain any responsive documents being maintained by the IT service provider. Plaintiffs' Motion to Compel is granted as to Request No. 22.

---

[6]*See Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 642 (D. Kan. 2004) (when an objection or privilege is initially raised but not relied upon in response to the motion to compel, the court will deem the objection or privilege abandoned.).

[7]Fed. R. Civ. P. 34(a)(1).

III.    **Interrogatories in Dispute**

   A.    **Interrogatory No. 4**

Interrogatory No.4 seeks information regarding the steps Defendant took, if any, to preserve documents and ESI.  Defendant objected to the interrogatory as seeking irrelevant information and documents protected by the attorney-client privilege.  Subject to its objections, it stated that "it was instructed by counsel to take steps to preserve all evidence that is potentially relevant to this litigation, including all documents, recordings, electronically stored information, and physical objects."

Plaintiffs claim that nowhere in Defendant's production do they find the litigation hold letter or any other documents or e-mails implementing the litigation hold.  They request that Defendant be ordered to produce the documents and withdraw its improper objection.

Defendant states in its response to the motion to compel that a litigation hold letter was sent to the facility on May 31, 2011, with instructions to preserve evidence relevant to the case.  It reiterates that it initially objected to the interrogatory as violating the attorney-client privilege.  But Defendant does not further discuss or support its attorney-client privilege objection in its response brief.  Defendant has thus failed to meet its burden of establishing the applicability of the attorney-client privilege for information responsive to this interrogatory.   In addition, because Plaintiffs have raised reasonable concerns that not all responsive documents and ESI have been located and produced, information on the steps Defendant took to preserve relevant documents and ESI will be discussed at the evidentiary hearing.

### B.     Interrogatory No. 7

Interrogatory No. 7 asks Defendant to "[d]escribe fully and in detail (including names and positions of the individual involved, and the relevant dates) what steps, if any, [it] took to prevent retaliation against Plaintiffs." Defendant objected to the interrogatory as being ambiguous, and Defendant responded that it applied its sexual harassment policy.

Plaintiffs believe Defendant's objection is disingenuous and that Defendant has not met its burden of showing why the interrogatory is ambiguous. Further, Plaintiffs do not believe that the response, "Defendant applied its Sexual Harassment Policy" fully answers the interrogatory because it does not provide any information as to what Defendant actually did. Plaintiffs request that Defendant be ordered to remove its objection and answer the interrogatory.

Defendant contends that it has fully responded to this interrogatory.  It further explains its position that the complaints Plaintiffs raised before the termination of their respective employments failed to rise to the level of complaints of sexual harassment and/or discrimination, and that no complaints of sexual harassment were raised until Plaintiffs' filed their respective charges of discrimination.  As such, no steps could have been taken to prevent retaliation for these complaints, because no complaints of sexual harassment and/or discrimination were made. The complaints raised by Plaintiffs were merely personality conflicts between employees and their supervisor.

Upon review of Defendant's interrogatory answer, the Court finds that Defendant has not adequately answered Interrogatory No. 7 with the generic statement "Defendant applied

its Sexual Harassment Policy." Defendant has further not adequately answered the interrogatory by stating in its response brief that "no steps could have been taken to prevent retaliation, because no complaints of sexual harassment and/or discrimination were made," based upon its limiting the triggering complaints to those for sexual harassment or complaints that Defendant considered to rise to the level of sexual harassment and/or discrimination. Plaintiffs' motion to compel further answer to Interrogatory No. 7 is therefore granted. Defendant shall serve a supplemental interrogatory answer that describes in detail (including names and positions of the individual involved, and the relevant dates) what steps, if any, it took to prevent retaliation against Plaintiffs.

## C.    Interrogatory No. 8

Interrogatory No. 8 asks Defendant to state with specificity the reasons for Plaintiffs' terminations, including, without limitation, any alleged performance deficiencies and identify all persons who witnessed these performance deficiencies. Defendant answered Interrogatory No. 8 as follows:

> Plaintiff Chura submitted a written resignation letter on December 30, 2009, which stated that her last day of work was to be January 31, 2010. Plaintiff Cook's employment was terminated as a result of her inadequate job performance, as well as a violation of HIPAA. Plaintiff Gilstrap's employment was terminated as a result of his poor performance, repeated disciplinary problems, negative and insubordinate attitude toward his supervisors, as well as for his inability to follow his physician's medical restrictions following the injury to his hand.[8]

Plaintiffs complain that Defendant did not produce all of its internal documents and

---

[8]Ex. 2 to Pls.' Mem. In Supp. of Mot. to Compel (ECF No. 21-2).

emails pertaining to the Plaintiffs' terminations and Defendant's response, if any, to their complaints. They also complain that Defendant did not fully answer the interrogatory by identifying the witnesses who had knowledge of Plaintiffs' alleged performance deficiencies. They ask for an order compelling Defendant to fully answer the interrogatory.

Upon review of Defendant's interrogatory answer and its response to the motion to compel, the Court finds that Defendant has answered Interrogatory No. 8 by explaining the reasons for termination of Plaintiffs' employment.  Defendant, however, fails to answer the part of the interrogatory that asks for the identity of all persons who witnessed any alleged performance deficiencies.  Although Plaintiffs complain that Defendant did not produce all of the internal documents and email pertaining to their employment terminations, the interrogatory does not request production of documents; it only seeks the reasons for the terminations.  Plaintiffs' motion to compel further answer to Interrogatory No. 8 is therefore granted in part and denied in part.  Defendant shall serve a supplemental interrogatory answer that identifies all persons who witnessed the claimed work performance deficiencies of Plaintiffs Cook and Gilstrap.

### D.      Interrogatory No. 12

Interrogatory No. 12 requests that Defendant identify for the time period June 1, 2008 to January 31, 2010, each and every communication concerning Plaintiff Chura's hire, job performance, wages, complaints or investigations into any of Ms. Chura's complaints.  The interrogatory further requires Defendant to state for each communication the date of the communication, the author or participants, any assumed names or alias/es of the author or

participants and business numbers of the author or participant, the content of the communication, the purpose of the communication and whether the communication was oral or written.  Defendant objected to Interrogatory No. 12 on the basis that it seeks information protected by the attorney-client privilege and the attorney work product doctrine.  Defendant then states that "communications regarding Ms. Chura's hire, job performance, wages, and complaints or investigations into complaints are enclosed in Ms. Chura's personnel file." Defendant maintains in its response brief that there are no additional documents to produce with regard to Plaintiff Chura's personnel file. It does not reassert any objection that documents are being withheld on the basis of attorney-client privilege or work product.

Plaintiffs argue that documents generated by the human resources director, the facility administrator, or anyone else involved or informed about their alleged investigation into Ms. Chura's complaints are responsive and should be produced.  It asks the Court to compel Defendant to produce responsive ESI and documents.

The Court finds that information responsive to Interrogatory No. 12 may not have been located by Defendant due to insufficient search efforts for responsive ESI and documents.  The Court will therefore defer ruling on this interrogatory until after the evidentiary hearing.

### E.    Interrogatory No. 13

Interrogatory No. 13 asks whether Defendant has contacted any third persons regarding Ms. Chura's hire, employment, complaints, resignation, or for any other reason. It also requires that Defendant identify the date, name of each person involved with the

contact, the purpose of each contact, and a summary of what was communicated.  Defendant objected that the interrogatory seeks information not relevant to the issues in the case, that it invades the privacy rights of third parties, and to the extent it requests documents protected from disclosure by the attorney-client privilege or work product doctrine.

In its response brief, Defendant states that "[t]o the best of its knowledge, there were no third party communications regarding Plaintiffs employment, except to the extent that Defendant may have conducted routine reference checks." It further states that if any such communications do exist, those communications can be found in Plaintiffs' personnel files, and/or charge files, both of which have been produced.  It contends that it has fully answered this interrogatory.

Based upon a review of Defendant's interrogatory answer and its response to the motion to compel, the Court finds that Defendant has now adequately answered Interrogatory No. 13.  Plaintiffs' motion to compel further answer to Interrogatory No. 13 is denied.

### F.    Interrogatory No. 15

Interrogatory No. 15 asks Defendant to state its net worth.  Defendant objects to the interrogatory as seeking information that is not relevant to the issues in this lawsuit.  It further objects to the interrogatory because the information sought is not discoverable prior to the Court making a preliminary finding that Plaintiffs can present a submissible claim for punitive damages.

It is well settled that when a plaintiff alleges sufficient facts to claim punitive damages against a defendant, information regarding the defendant's net worth or financial condition

is relevant because it can be considered in determining the amount of such damages.[9]   The party seeking discovery generally "need not establish a *prima facie* case on the issue of punitive damages before it can obtain pretrial discovery of [the other party's] financial statements and tax returns."[10]  To discover a party's financial condition in light of a claim for punitive damages, requesting parties generally must simply show the claim for punitive damages is not spurious.[11]

Defendant argues that Plaintiffs' complaint is devoid of any specific facts which suggest that they are entitled to punitive damages, and they have provided no specific factual allegations to support their general punitive damages prayer for relief.  They have therefore failed to show that their claims for punitive damages are not spurious. In the alternative, if the Court finds that Defendant's financial information is discoverable, Defendant requests that the Court hold the discovery requests in abeyance until it is apparent that Defendant's alleged actions meet the requirements for punitive damages, or survives a dispositive motion.

Plaintiffs argue that Defendant has set forth no reasons as to why Plaintiffs' punitive damage claim is allegedly spurious and Defendant should be ordered to produce its financial information.

The Court has reviewed Plaintiffs' complaint and agrees with Defendant that Plaintiffs

---

[9]*Sonnino v. Univ. Kan. Hosp. Auth.*, 220 F.R.D. 633, 654 (D. Kan. 2004).

[10]*Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.,* 209 F.R.D. 208, 216 (D. Kan. 2002).

[11]*Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625962, at *3 (D. Kan. Oct. 5, 1995) (citing *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 152 (D. Kan. 1990)).

have provided no specific factual allegations to support their general punitive damages prayer for relief. Rather than denying the motion, however, the Court will grant Defendant's alternative request that its obligation to answer Interrogatory No. 15 be stayed until such time as Plaintiffs' claims survive a ruling on a dispositive motion. Defendant's obligation to answer Plaintiffs' Interrogatory No. 15 is hereby stayed until 14 days after the Court rules on Defendant's motion for summary judgment.[12]

## IV.   Sufficiency of Defendant's Search for ESI

For many of Defendant's responses to their discovery requests, Plaintiffs attribute the lack of responsive documents and ESI to Defendant's alleged failure to preserve relevant evidence or its failure perform a reasonable search of its computer systems. They claim that Defendant has failed to run forensically sound searches for electronically stored information, has produced no native electronic files, actual emails, attachments or images, work processing documents, text messages or faxes. Nor has Defendant provided a valid basis for such failure. Plaintiffs claim that they are entitled to seek responsive ESI and Defendant's wholesale failure to produce electronically stored information is preventing them from timely prosecuting their claims. They ask that the Court order Defendant to immediately produce ESI responsive to their discovery requests.

Defendant states in its response to the motion to compel that after the September 12,

---

[12]If Defendant does not file a motion for summary judgment, then Defendant's obligation to answer Plaintiffs' Interrogatory No. 15 is hereby stayed until 14 days after the Scheduling Order deadline for filing a dispositive motion.

2011 status conference with the Court, Defendant's counsel informed Plaintiffs' counsel that he would contact his client regarding the manner in which searches were conducted, and verify that all listed search terms had been searched. After obtaining this information from Defendant, and verifying that all search terms had been searched on the alleged harasser's computer, Defendant's counsel attempted to contact Plaintiffs' counsel on or about the same day he spoke to Defendant, so that the parties could work towards a resolution. But his phone calls went unreturned and Defendant's counsel did not hear from Plaintiffs' counsel prior to filing this motion.

Plaintiffs argue in their reply that Defendant must search all computers used by employees of the facility and corporate office who participated in or were involved in Defendant's investigation of the allegations of the alleged harasser's inappropriate behavior and the sexual activities at the facility or who participated in the disciplining or termination of the Plaintiffs.

Although it appears that counsel have sufficiently complied with D. Kan. Rule 37.2 by conferring before filing this motion, neither side explains whether they have further attempted to resolve this issue since the motion was filed, and if they have not made such an attempt, why they have not done so. The duty to cooperate in an effort to achieve the "just, speedy and inexpensive" determination continues throughout the litigation.

As previously stated, the minimal information provided in the parties' briefing limits the Court's ability to determine whether Defendant met its duty to conduct a reasonable search for ESI responsive to many of Plaintiffs' discovery requests, as well as its duty

preserve relevant evidence.  It is unclear what actions Defendant undertook in order to preserve and search for responsive ESI.  Plaintiffs claim that Defendant only searched one computer for ESI.  The Court finds that Defendant's failure to produce any ESI, such as emails, attachments, exhibits, and word processing documents, raises justifiable concerns that Defendant may have 1) failed to preserve relevant evidence, or 2) failed to conduct a reasonable search for ESI responsive to Plaintiffs' discovery requests.[13]  The Court will therefore set an evidentiary hearing on **April 30, 2012 at 2:00 p.m. (CDT)** in Courtroom 223, United States Courthouse, 500 State Avenue, Kansas City, Kansas regarding Defendant's efforts to preserve and search for discovery responsive to Plaintiffs' interrogatories and requests for production.  Defendant should be prepared to present evidence[14] on the following topics:

1)   At the time of the initial charge of discrimination, what did Defendant's system of creating and storing ESI consist of;

2)   When and how a litigation hold was instituted;

3)   What employees were notified of the litigation hold;

4)   What efforts were made to preserve ESI;

5)   What or whose computers or components of the computer systems were

---

[13]*FTC v. Affiliate Strategies, Inc.*, No. 09-4104-JAR, 2011 WL 251449, at *3 (D. Kan. Jan. 26, 2011); *accord Hock Foods, Inc. v. William Blair & Co., L.L.C.*, No. 09-2588-KHV, 2011 WL 884446, at *8 (D. Kan. Mar. 11, 2011).

[14]This should include both oral testimony and any documents that provide information about the topics.

searched for responsive ESI;

6)    How the computers or computer information systems were searched (e.g., keyword searches, manual review, computer-assisted coding); and

7)    Who performed the searches.

Based on the evidence presented at the hearing, the Court will determine whether 1) Defendant has made reasonable efforts to search for responsive documents and ESI, 2) whether it should be compelled to make further efforts, and 3) what those efforts should be.

Plaintiffs have also raised the issues of whether Defendant has to produce ESI as part of its Rule 26(a) disclosures, as well as whether Defendant was required by the Scheduling Order to produce the ESI in native format with metadata attached.  The original Scheduling Order entered in this case memorialized the parties' following agreements on ESI:

> ESI shall be produced in native format with metadata attached so long as this format is not unduly burdensome and involves a commonly-utilized native format such as Microsoft Office. When native format is unduly burdensome or not possible, documents shall be produced in .tiff format with load files.[15]

Although Plaintiffs initially raised the issue of whether Defendant has an obligation to produce ESI as part of its required Rule 26(a) disclosures, Plaintiffs do not request any relief in their motion to compel or reply relating to Defendant's Rule 26(a) disclosures other than perhaps requesting that Defendant be compelled to make further efforts to search its computers or computer systems for information that potentially would be required to be disclosed under Rule 26(a).  As to the issue of form of production of any ESI, the Court will

_____

[15]June 3, 2011 Sch. Order (ECF No. 8) at 4-5.

address the issue at the hearing if it determines that Defendant needs to take further actions that may result in the production of ESI.

## V.     Expenses

The Court defers any ruling on expenses until after the evidentiary hearing.

**IT IS THEREFORE ORDERED THAT** Plaintiffs' Motion to Compel Defendant to Search for and Produce Electronically Stored Information and Other Documents and Answer Certain Interrogatories (ECF No. 20) is granted in part and denied in part.  The motion is granted as to Request for Production Nos. 6-7, 14, 18, and 22, and Interrogatory Nos. 7 and 8.  The motion is denied as to Request for Production No. 2, and Interrogatory Nos. 13 and 15.  The Court defers ruling on Request for Production Nos. 1, 3-5, 8-11, 13, 19-20 and Interrogatory Nos. 4 and 12 until after an evidentiary hearing regarding Defendant's efforts to preserve and search for ESI responsive to Plaintiffs' interrogatories and requests for production.  Defendant shall produce all documents ordered produced herein responsive to Request for Production Nos. 6-7, 14, 18, and 22, and serve a supplemental answer to Interrogatory Nos. 7 and 8 **within 30 days of the date of this Memorandum and Order.**

**IT IS FURTHER ORDERED THAT** an evidentiary hearing regarding Defendant's efforts to preserve and search for ESI responsive to Plaintiffs' interrogatories and requests for production is set for **April 30, 2012 at 2:00 p.m. (CDT)** in Courtroom 223, United States Courthouse, 500 State Avenue, Kansas City, Kansas.

IT IS SO ORDERED.

Dated in Kansas City, Kansas, this 20th day of March, 2012.

s/ David J. Waxse
David J. Waxse
United States Magistrate Judge